FILED

AUG 19 2016

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANIRUDHA SURABHI,<br><br>                   Plaintiff,<br>v.<br>ROBERT MILLER; KENNETH STRONG; KRANIUM SPORTS, LLC; MOBILITY TOOLS, LLC; and DOES 1-10, inclusive,<br><br>                   Defendants.<br><br>ROBERT MILLER; KENNETH STRONG; KRANIUM SPORTS, LLC; MOBILITY TOOLS, LLC; and DOES 1-10, inclusive,<br><br>                   Counterclaimants,<br>v.<br>ANIRUDHA SURABHI,<br><br>                   Counterdefendant. | CASE NO.15cv1830-WQH-MDD<br><br>ORDER |

HAYES, Judge:

The matter before the Court is the motion to dismiss and/or strike Defendants'/Counterclaimants' amended counterclaims (ECF No. 31) filed by Plaintiff/Counterdefendant.

**I. Background**

On August 17, 2015, Plaintiff initiated this action by filing a Complaint. (ECF

No. 1). On September 4, 2015, Plaintiff filed a First Amended Complaint, alleging claims of fraud, breach of contract, breach of the covenant of good faith and fair dealing, promissory estoppel, violation of California Business and Professions Code Section 17200, *et seq.*, unjust enrichment, negligence, constructive trust, and accounting. (ECF No. 3).

On February 1, 2016, Defendants filed an answer to the First Amended Complaint and counterclaims. (ECF No. 24). On February 3, 2016, Defendants filed an amended answer to the First Amended Complaint and amended counterclaims, alleging nineteen affirmative defenses and counterclaims for "fraud; deceit; fraudulent and intentional misrepresentation; promissory fraud; and fraudulent inducement." (ECF No. 25).

On February 29, 2016, Plaintiff filed the memorandum of points and authorities for a motion for a more definite statement and/or to dismiss and strike Defendant's counterclaims. (ECF No. 29). On March 1, 2016, Plaintiff filed a motion to dismiss for failure to state a claim and dismiss and/or strike, attaching a memorandum of points and authorities identical to the memorandum filed in ECF No. 29. (ECF No. 31).

On March 25, 2016, Defendants filed an opposition to the motion to dismiss. (ECF No. 35). Defendants requested that "should the Court determine and accept Plaintiff's MTD as being timely filed . . . Defendants hereby move the Court for leave to amend this Opposition to address Plaintiff's [points and authorities] with more particularity . . . ." (ECF No. 35 at 5).

On July 20, 2016, the Court issued an Order denying the initial memorandum of points and authorities filed by Plaintiff as moot, and allowing Defendants to respond to Plaintiff's motion to dismiss and/or strike and motion for a more definite statement (ECF No. 31) on or before July 25, 2016.[1]

On July 25, 2016, Defendants filed an amended opposition. (ECF No. 55).

---

[1] In the Court's July 20, 2016 Order, the Court indicated that it would consider both Plaintiff's motion to dismiss (ECF No. 31) and Defendants' opposition to the motion to dismiss. Requests to strike based on timeliness are denied.

1  Defendants contend that the counterclaims provide the requisite particularity.

2        On August 1, 2016, Plaintiff filed a reply to the amended opposition. (ECF No.
3  58). Plaintiff contends that "[d]espite the Court allowing Defendants an additional
4  opportunity to respond to the merits of Plaintiff's Motion to Strike and/or Dismiss . .
5  . [Defendants] failed once again to address the merits of Plaintiff's motion." *Id.* at 3.

6  **II. Allegations of Counterclaims by all Defendants against Plaintiff**

7        "In or about May, 2013, Robert Miller and Ken Strong (collectively "M&S"),
8  as members of Mobility Tools, LLC [("MTLLC")], conceived of providing the
9  bikeshare market in the United States with inexpensive cardboard, collapsible,
10 disposable, and recyclable helmets through vending machines at bike rental locations
11 in major U.S. cities." (ECF No. 25 ¶ 158). "MTLLC discovered that
12 [Plaintiff/Counterdefendant and his employer, KLTD,] had purportedly designed a
13 cardboard helmet." *Id.* ¶ 159.

> Counterdefendant represented to M&S during the May 2013 telephone conversation(s) that he was the co-owner (which was subsequently discovered to be untrue), head designer and engineer of KLTD. Counterdefendant further represented: (a) that he had the expertise and capability to design and engineer a helmet to meet M&S's specific requirements (which was also untrue) . . . (b) by utilizing KLTD's patented technology (which was subsequently discovered that neither KLTD nor Counterdefendant had). Counterdefendant represented to M&S that even without an outer shell, KLTD and Counterdefendants' purportedly patented cardboard honeycomb technology would pass [United States Consumer Protection Safety Commission standards] . . . which also turned out to be untrue.

*Id.* ¶¶ 160, 185. "Counterdefendant represented to M&S that KLTD had patents on its helmet design; however M&S subsequently discovered that KLTD only recently . . . filed applications to obtain European patents. No patents were in fact issued." *Id.* ¶ 164.

"Based on Counterdefendants' representations, M&S agreed to pursue the purchase of KLTD . . . ." *Id.* ¶ 162.

> Counterdefendant . . . . claimed that he . . . would 'sell' [his] expertise [to MTLLC] by working for MTLLC in a yet-to-be-formed company that would acquire KLTD, operate in Oceanside, California and manufacture

> Counterdefendant's helmet design(s) according to MTLLC's requirements. . . . M&S agreed to negotiate the purchase of KLTD under these general parameters.

*Id.* ¶ 168. "During the due diligence process, it was discovered that Counterdefendant in fact did not own 50% . . . of KLTD or any stock in KLTD whatsoever as he untruthfully claimed." *Id.* ¶ 167. "On February 12, 2014, M&S caused Kranium Sports, LLC, Mobility Research, LLC; and Mobility Tools, LLC to be formed in anticipation of being involved in the purchase of KLTD and the possible future employment of Counterdefendant." *Id.* ¶ 171.

"After being asked on multiple occasions to produce his design, Counterdefendant finally admitted to M&S that [he] had only 'concepts' for such a helmet and had not actually designed one. When further asked to produce his 'concepts,' Counterdefendant failed to do so." *Id.* ¶ 175. "Counterdefendant finally conceded that he had not worked on a collapsible helmet at all and . . . had no viable 'concept' for one." *Id.* "Counterdefendant failed to exhibit the required engineering expertise, any practical knowledge or ability to design a certifiable, viable, collapsible helmet . . . ." *Id.* ¶ 176.

"[A]t M&S' substantial expense, immigration counsel worked extremely diligently on the non-immigrant visa required to enable Counterdefendant to work in the U.S." *Id.* ¶ 177. "On July 25, 2014, . . . [Counterdefendant] insisted he would not proceed with the visa application if M&S did not remove a 3-year vesting provision in the unsigned Employment Agreement and give Counterdefendant outright 10% advance ownership of KSLLC." *Id.* ¶ 178. "Counterdefendant's agenda and intent all along was to leave KSLLC after using the immigration application process after laying claim to a 10% ownership interest in KSLLC." *Id.* ¶ 179.

> Counterclaimants have been defrauded by Counterdefendant's deceit and misrepresentations . . . resulting in injury and damages to Counterclaimants, inter alia from their purchase of KLTD and the costs involved in attempts to secure Counterdefendant's employment in the U.S. and those payments to Counterdefendant he did not earn.

*Id.* ¶ 181.

Under the heading "statement of entitlement to relief for fraud; deceit, fraudulent and intentional misrepresentation; promissory fraud; and fraudulent inducement," Defendants/Counterclaimants allege that "Counterdefendant maliciously, intentionally, deceitfully and fraudulently, made . . . false representations and statements . . . . [and] Counterdefendant intended that Counterclaimants would rely on these misleading and false material representations . . . to their detriment." *Id.* ¶ 183. Counterclaimants allege that Counterdefendant acted with "intent to defraud M&S" and that Counterclaimants justifiably relied on Counterdefendant's representations, causing injuries and damages. *Id.* ¶ 187.

Counterclaimants' "Demand for Relief Sought" includes:

> Restitution and disgorgement for the purchase price of KLTD . . . ; The costs and cash investment in the project and business that Counterdefendant induced Counterclaimants to invest in . . . ; Interest lost on Countercomplainants' investment . . . ; Attorneys' fees and costs . . . . and such relief including actual, compensatory, punitive, and other damages according to proof at trial . . . .

*Id.* ¶ 189.

## III. Motion to Dismiss

### A. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Federal Rule of Civil Procedure 8 states, "A pleading that states a claim for relief must contain: (1) a short and plain statement of the grounds for the court's jurisdiction . . . ; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought . . . ." Fed. R. Civ. P. 8(a). Federal Rule of Civil Procedure 10 states, "A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. . . . If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense." Fed. R.

Civ. P. 10. Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted).

**B. Contentions of the Parties**

Plaintiff/Counterdefendant contends that the counterclaims failed to plead fraud with particularity. Plaintiff/Counterdefendant contends that the counterclaims do not specify the allegedly false statements that were made by Plaintiff/Counterdefendant or the damage to Defendants/Counterclaimants caused by the alleged false statements. Plaintiff/Counterdefendant contends that under Federal Rule of Civil Procedure 12(e), he is entitled to a more definite statement before he is obligated to respond to the counterclaims. Plaintiff/Counterdefendant contends that the allegations in the counterclaims fail to meet pleading standards under Federal Rules of Civil Procedure

8(a)(2), 8(d)(1) and 12(a)(1). Defendants/Counterclaimants contend that the Counterclaims allege sufficient facts to state "multiple counterclaims" against Plaintiff/Counterdefendant. (ECF No. 35 ¶ 18).

### C. Discussion

Under California law, the elements of a claim for fraud are: "(1) a misrepresentation, which includes a concealment or nondisclosure; (2) knowledge of the falsity of the misrepresentation, i.e., scienter; (3) intent to induce reliance on the misrepresentation; (4) justifiable reliance; and (5) resulting damages." *Cadlo v. Owens-Illinois, Inc.*, 125 Cal. App. 4th 513, 519 (2004) (citing *Small v. Fritz Cos., Inc.*, 30 Cal. 4th 167, 173 (2003)). Claims sounding in fraud or mistake must comply with the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which requires that a complaint "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) "requires . . . an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (quotation omitted); *see also Vess*, 317 F.3d at 1106 (9th Cir. 2003) (averments of fraud must be accompanied by "the who, what, when, where, and how of the misconduct charged") (quotation omitted).

In this case, Section D of the counterclaims is titled, "statement of entitlement to relief for fraud; deceit; fraudulent and intentional misrepresentation; promissory fraud; and fraudulent inducement." *See* ECF No. 25 ¶ 185. To the extent that Defendants/Counterclaimants seek relief for "fraud; deceit; fraudulent and intentional misrepresentation," the Court finds that the counterclaims contain sufficient allegations of specific misrepresentations made by Plaintiff/Counterdefendant, Plaintiff/Counterdefendant's knowledge of the misrepresentation with intent to induce Defendants/Counterclaimants reliance on the misrepresentations, justifiable reliance by Defendants/Counterclaimants, and damages. The Court concludes that the

allegations of the counterclaims are sufficient to state a claim for fraud that complies with the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).

To the extent that Defendants/Counterclaimants attempt to set forth separate claims for fraudulent inducement and promissory fraud, the counterclaims do not allege sufficient facts that suggest that Defendants/Counterclaimants are entitled to relief on those claims. *See Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982) (holding that in evaluating whether complaint states a claim, even a "liberal interpretation . . . may not supply elements of the claim that were not initially pled."). The Court concludes that to the extent that Defendants/Counteclaimants seek to bring separate claims for fraudulent inducement and promissory fraud, the counterclaims do not adequately inform Plaintiff/Counterdefendant of the claims alleged against him. *See Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) .... requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the claim, but also 'grounds' on which the claim rests.").

To the extent Defendants/Counterclaimants bring a counterclaim for fraud, the motion to dismiss is denied. To the extent Defendants/Counterclaimants bring separate counterclaims for promissory fraud and fraudulent inducement, the motion to dismiss is granted. Because the Court dismisses all counterclaims except for the fraud counterclaim, the Court denies the motion for a more definite statement as moot.

**IV. Motion to Strike Request for Attorney's Fees**

Plaintiff contends that the prayer for attorney's fees should be stricken from the counterclaims because Defendants/Counterclaimants fail to allege a contract or a statutory basis for recovery of attorney's fees. Federal Rule of Civil Procedure 12(f) provides that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Motions to strike are generally disfavored and "should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *Neveau*

*v. City of Fresno*, 392 F. Supp. 2d 1159, 1170 (E.D. Cal. 2005) (*citing Colaprico v. Sun Microsystems, Inc.*, 758 F. Supp. 1335, 1339 (N.D. Cal. 1991)). "[C]ourts often require a showing of prejudice by the moving party before granting" a motion to strike, and "[u]ltimately, whether to grant a motion to strike lies within the sound discretion of the district court." *Cal. Dept. of Toxic Substances Control v. Alco Pacific, Inc.*, 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002) (*citing Fantasy, Inc., v. Fogerty*, 984 F.2d 1524, 1528 (9th Cir. 1993)). In exercising its discretion, the court views the pleadings in the light most favorable to the non-moving party, and "resolves any doubt as to the relevance of the challenged allegations or sufficiency of a defense in the defendant's favor." *Cal. Dept. of Toxic Substances Control*, 217 F. Supp. 2d at 1033. "Even when the defense under attack presents a purely legal question, courts are reluctant to determine disputed or substantial questions of law on a motion to strike." *S.E.C. v. Sands*, 902 F. Supp. 1149, 1166 (C.D. Cal. 1995). At this stage in the proceedings, the Court declines to strike Defendants' request for attorney's fees.

## V. Conclusion

IT IS HEREBY ORDERED that the motion to dismiss (ECF No. 31) is granted in part and denied in part. To the extent Plaintiff brings a claim for fraud, the motion to dismiss is denied. To the extent Plaintiff brings separate claims for promissory fraud and fraudulent inducement, the motion to dismiss is granted.

IT IS FURTHER ORDERED that the motion to strike is denied.

DATED: 8/19/16

_____
WILLIAM Q. HAYES
United States District Judge